25 N.J. Super. 192 (1953)
95 A.2d 759
ADAM GRETOWSKI, PLAINTIFF-RESPONDENT,
v.
HALL MOTOR EXPRESS AND THOMAS J. COPPERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1953.
Decided March 23, 1953.
*193 Before Judges EASTWOOD, BIGELOW, and JAYNE.
Mr. Jerome S. Lieb argued the cause for appellants (Messrs. Harkavy and Lieb, attorneys).
Mr. Charles P. Berman argued the cause for respondent (Mr. Harold D. Feuerstein, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The mishap out of which this litigation arose was the occurrence of a collision on the Belleville Turnpike at North Arlington on November 7, 1949 between an automobile owned and operated by the plaintiff and a tractor-trailer *194 owned by the defendant Hall Motor Express and driven by the defendant Thomas J. Coppers. The trial was conducted by the judge of the Passaic County District Court without a jury resulting in a judgment for the plaintiff in the sum of $350 damages. The application of the defendants for a new trial was denied.
No stenographic record of the evidence was made, hence our appellate survey of the case is confined to the statement of the proceedings settled by the trial judge pursuant to Rules 1:2-23; 4:2-6. See also Rule 7:13-3. Cherr v. Rubenstein, 22 N.J. Super. 212 (App. Div. 1952). It is with the scope of our review thus circumscribed that we have in response to the defendants' appeal studied the legal and factual propriety of the judgment.
Some of the relevant facts seem to be mutually acknowledged. The turnpike is divided into four traffic lanes. The plaintiff's vehicle was proceeding westerly on the inner or south lane for west-bound traffic, and the tractor-trailer was traveling easterly on the inner or north lane for east-bound traffic. In the locality of the mishap the highway curves to the plaintiff's right. The left front of the plaintiff's automobile and the left front and left side of the tractor-trailer came into collision.
It is rational to conclude that some front part of the one or of the other or of both vehicles proceeded to some extent over the center line of the highway in order for them so to come in actual contact. Each driver testified that the vehicle of the other did so. Disputations between parties sometimes leave the truth in the middle. Consequently the trial court became necessarily concerned not only with the existence of the alleged neglience of the defendant driver but also with the implication of the alleged contributory negligence of the plaintiff.
It is in view of those characteristics of the case that we discern the essentiality of the testimony of the apparently disinterested witness Shull. But before revealing the substance of the testimony of Shull, it will be illuminating to reproduce here from the statement of the proceedings the *195 plaintiff's description of the circumstances surrounding the occurrence of the collision.
The plaintiff testified that:
"As he approached a slight curve to his right, there was a car 6 feet ahead of him, one to his right, in the next lane, and one to his rear in the lane in which he was traveling. Traffic was very heavy.
He observed the tractor-trailer of the defendant, Hall Motor Express, for the first time coming downhill from the opposite direction 50 feet away from his car, traveling at a speed of 40 to 50 MPH, crossing the white center line into the lane of westbound traffic, and he, Mr. Gretkowski, closed his eyes, as he was unable to do anything to avoid the oncoming collision due to the speed of defendant's tractor-trailer, heavy traffic conditions and close proximity of cars in front, in back and to the right of plaintiff."
We may pause to confess that we have a rather nebulous understanding of the manner in which a tractor-trailer traveling at the speed of 50 miles an hour around a curve to its left and observed in its approach to cross the center line of the highway at a distance of 50 feet west of the plaintiff could have collided with the plaintiff's moving vehicle and have completely avoided the car proceeding in the same lane only six feet in front of it.
However, we pass on to the pertinent parts of the testimony of the witness Shull, who stated that:
"He was driving his car in a general westerly direction along the Belleville Turnpike, North Arlington, New Jersey, in the lane of traffic nearest the right curb with his right wheels 4 to 5 feet from the right curb.
As he approached this sharp curve to the right, his car was doing 30 MPH when the plaintiff car passed him on the left.
At the time of the collision the plaintiff car was to his left and one car length ahead.

* * * * * * * *
He then testified that his right wheels were 4 to 5 feet from the right curb, his car was 6 feet wide, the plaintiff car, using his best judgment, was 4 to 5 feet to his left, the plaintiff car was 6 feet wide, and the two westbound lanes were a total of 18 feet wide. (The testimony as to the plaintiff car, using his best judgment, being 4 to 5 feet to his left was objected to as being too speculative. This objection was sustained.)"
We are accordingly led by the statement of the trial judge to understand that he excluded from his consideration the *196 testimony of the witness relative to the widths of the cars and of the traffic lanes and of the relative positions of the vehicles on the highway.
We can only conjecture that the testimony was excluded either because it was deemed to be inadmissible opinion evidence or that it was based only upon the best judgment of the witness.
It must be at once recognized that in the pragmatical processes of the administration of justice the opinions of nonprofessional men are received concerning a broad variety of unscientific subjects in almost every daily judicial inquiry. Typical are such subjects as speed, velocity, height, depth, thickness, width, size, sound, form, quantity, time, heat, cold, number of persons or things, their appearance, identity, and numerous others. Ordinarily such information would not be otherwise reproducible. 7 Wigmore on Evidence, § 1977, et seq.; 20 Am. Jur. § 805, et seq. Cf. Senecal v. Drollette, 304 N.Y. 446, 108 N.E.2d 602 (Ct. App. 1952).
The admissibility of such testimony naturally rests upon the observations actually made by the witness and its weight is dependent, inter alia, upon the available opportunities for and the attentiveness devoted to the observations.
The descriptive testimony of the observant witness relative to such subjects is in most instances a conclusion expressive of the exercise of his best judgment. Vide, Baus v. Trenton and Mercer, &c., Corp., 102 N.J.L. 1 (Sup. Ct. 1925), affirmed 102 N.J.L. 712 (E. & A. 1926).
The following excerpt from the opinion rendered in Roeltgen v. Public Service Railway Co., 2 N.J. Misc. 471 (Sup. Ct. 1924), is appropriate:
"* * * The trial court, however, overruled two questions put to the witness DeBlasio, in which his opinion as to the speed of the automobile and the car was asked. The objection to the questions was based on the theory that the witness was not an expert, and, apparently, the court so view the inquiry. The questions were competent, since the rule of evidence is well settled that a witness may use his ordinary faculties for observation, and is entitled to testify as to the rate of speed a vehicle was proceeding, or whether, in his best judgment, the vehicle was proceeding at a rapid or at a slow rate of speed. In this respect there was error."
*197 In State v. Laster, 71 N.J.L. 586, 588 (E. & A. 1905), our Court of Errors and Appeals has stated:
"* * * Common observers, having special opportunity for observation, may testify to their opinions as conclusions of fact, although they are not experts, if the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and their opinions are such as men in general are capable of forming with reasonable correctness on the facts observed."
Mathematically calculated, the import of the excluded testimony is that the left side of the plaintiff's car was from two to four feet to his left or south of the center line of the highway. Had that testimony, its credibility and evidential significance been considered and regarded as a true representation of the path of the plaintiff's vehicle, it would have undoubtedly been materially influential in the decision of the case.
We conclude that the testimony was excluded by a mistake which injuriously affected the substantial rights of the defendants. Rules 1:2-20; 4:2-6.
The judgment is reversed and a new trial granted.