**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3655-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILLIAM A. GERENA,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**January 5, 2021**

**APPELLATE DIVISION**

Submitted December 14, 2020 – Decided January 5, 2021

Before Judges Sabatino, Currier and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-10-0853.

Joseph E. Krakora, Public Defender, attorney for appellant (Melanie K. Dellplain, Assistant Deputy Public Defender, of counsel and on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Ednin D. Martinez, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In this criminal appeal, defendant principally contends the trial judge should not have admitted opinion testimony from a police officer and a civilian

eyewitness estimating the range of heights and ages of children they had observed near defendant in a public park. The witnesses saw the group of children, accompanied by several adults, playing on equipment in a playground. The State relied on their testimony to prove that one or more of the children was under the age of thirteen, a statutory grading element of the charged offenses of lewdness and sexual assault by contact.

The trial court rejected defendant's contention that the opinion testimony was too speculative to be considered by the jury. On appeal, defendant reiterates this argument, contending as a general proposition that witnesses commonly misjudge the ages and heights of other persons.

For the reasons that follow, we affirm the court's evidentiary ruling. In the circumstances presented, the two witnesses had an adequate opportunity to view the physical characteristics and activities of the group of children to enable them to provide lay opinions under N.J.R.E. 701 about the perceived ranges of the children's heights and ages.

Although we appreciate the inherent risks of imprecision and mistake when eyewitnesses estimate the heights or ages of other persons, such lay opinions nonetheless may be admissible under Rule 701 and helpful to the trier of fact, subject of course to cross-examination and other forms of impeachment.

A-3655-18T2

In evaluating the admissibility of such evidence, a court should consider a variety of factors, such as: (1) distance, (2) length of time of the observation, (3) any observed activity of the person, (4) physical comparisons with the height or size of nearby objects or other persons, (5) whether the eyewitness attests to a range rather than a specific height or age, (6) whether the observed individual has a comparatively similar age or height as the witness, (7) whether there is corroborating proof, and (8) the totality of circumstances. In appropriate cases, the court may exclude or limit the opinion testimony in its discretion under N.J.R.E. 403 and, if warranted, provide jurors with a limiting or cautionary instruction.

Because it is contrary to the Supreme Court's evidence rules and case law governing lay opinion, we decline to apply the 1916 categorical pronouncement of the Court of Errors and Appeals that age "is not within the category of things . . . which . . . can be proved by opinion testimony."[1] Rather, we apply a contextual, case-by-case analysis of admissibility of such proof consistent with our modern Rules of Evidence and prevailing case law principles.

---

[1] State v. Koettgen, 89 N.J.L. 678, 683 (E. & A. 1916), discussed in Part II, infra.

Based on these principles, we uphold the trial court's admission of the opinion evidence and affirm defendant's conviction for fourth-degree lewdness. However, we remand for a hearing on jail credits.

I.

This matter arose after a seventeen-year-old eyewitness, A.G.,[2] called 9-1-1 at approximately 5:45 p.m. on April 24, 2018. A.G. told the police that, while walking her dog alone, she had just seen a man exposing himself to a group of children in a playground within a Jersey City park.

According to A.G., when she arrived at the park, she noticed about fifteen children and five adults gathered there. A.G. also saw a man, later identified as defendant William A. Gerena, sitting on a bench towards the back of the park. She estimated she was standing about twenty-five feet away from the man. She saw that his penis was out of his pants and that he was stroking it with his hand. She looked at him for about three seconds, turned away, and then looked at him again for about six more seconds and saw him engaging in the same activity.

A.G. estimated the children were approximately ten feet away from the man. The man and the children were separated by a black fence.

---

[2] We use initials because A.G. was a minor at the time.

A-3655-18T2

A.G. did not record any of her observations with her cell phone. No surveillance cameras in the park captured the alleged incident.

After observing the man, A.G. left the park, crossed the street, and called her grandmother to describe what she had seen. Shortly thereafter, A.G. called 9-1-1 and reported that there was a man "in the park . . . touching himself." A.G. stayed across the street from the park for the duration of the 9-1-1 call. She remained there until the police arrived and the officers ultimately left with defendant.

Sergeant Nicholas Gerardi of the Jersey City Police Department[3] and a fellow police officer swiftly responded to the scene at approximately 5:49 p.m. It took the officers only about two minutes to arrive at the park. Two additional patrol officers also arrived as backup.

When the officers first arrived at the scene, they spoke briefly with A.G. They then entered the park.

Gerardi testified that when he entered the park, he saw fifteen to twenty children and "maybe, [eight] parents" present. He observed the children were playing in the playground area on the slides, monkey bars, and other equipment, and "some parents were sitting on the side just watching them."

---

[3] At the time of the incident, Gerardi had the rank of patrolman.

Gerardi then saw a man later identified as defendant sitting on a bench facing the playground, with his penis exposed and erect. According to Gerardi, when defendant saw the officers, he attempted to hide his penis and place it back into his pants. The officers arrested defendant and placed him in a patrol car. After the officers arrested defendant, they asked A.G. whether he was the man she had called 9-1-1 about, and she confirmed that he was.

Gerardi was unable to speak with any of the adults or children who were present at the scene that day. Gerardi explained this was because "[d]uring the time that [the officers] were dealing with the defendant there was some police activity going on. So a lot of the parents took their kids and left the park." Gerardi mentioned he believed that unspecified "witnesses" at the park gave statements to "the detectives," but such statements were not produced at trial.[4]

A grand jury charged defendant with second-degree sexual assault by contact, N.J.S.A. 2C:14-2(b), and fourth-degree lewdness, N.J.S.A. 2C:14-4(b)(1), plus a child endangerment count that was voluntarily dismissed before trial. Both offenses

---

[4] We note the police reports supplied with the presentence report contain no indication that any witnesses were interviewed, other than A.G.

require the State to prove that at least one of the victims was under the age of thirteen.[5]

At trial, both Gerardi and A.G. recounted to the jury what they had seen at the park. As part of their accounts, the two witnesses described defendant, as well as the children and adults they had seen at the playground.

As we will discuss in our legal analysis, the central issue in this appeal concerns the portions of the testimony of Gerardi and A.G. in which they estimated the ranges of ages and heights of the children they had each seen at the park.

Gerardi provided the following testimony in this regard about ages and heights. Initially, the trial judge sustained defense counsel's objection to Gerardi estimating the children's ages:

> THE PROSECUTOR: Were you able to tell approximately how old the children were that you observed in the park?
>
> GERARDI: I – yes. They were in ranges of about, I would say, [three] to [thirteen] years old.
>
> DEFENSE COUNSEL: Objection.
>
> THE PROSECUTOR: May I be heard at side bar?

---

[5] In addition, the judge charged the jury at trial with the lesser-included offense of disorderly persons lewdness, which does not require as an element a victim under the age of thirteen. See N.J.S.A. 2C:14-4(a).

DEFENSE COUNSEL: Speculation.

THE COURT: All right.

(Side bar discussion.)

DEFENSE COUNSEL: My understanding is that the officers did not speak to any children or parents. I'm not sure how they were able to ascertain precise ages. I would understand if they were able to say that they were young children, but I think to specify ages when –

THE COURT: Yeah.

DEFENSE COUNSEL: – they lack that knowledge –

THE PROSECUTOR: Nobody – he provided a range[,] that's an opinion, lay opinion. He's allowed by [Evidence] Rule 701. I could also elicit –

THE COURT: He better flesh that out more because I'm not that – you know, age is obviously a key issue in this case. And in that –

THE PROSECUTOR: I'll ask him follow[-]up questions, Judge.

THE COURT: I'm going to sustain this objection.

DEFENSE COUNSEL: Can that be stricken? His testimony –

THE COURT: Hmm? Did he testify?

DEFENSE COUNSEL: – as to age? Yeah. He said [three] to [thirteen].

8

THE COURT: Okay.

(Side bar discussion concluded.)

THE COURT: Okay. <u>I'm sustaining the objection</u>.

[Addressing the jury:] <u>So please disregard</u> – if there was an answer I'm going to ask you to <u>disregard the answer</u>. The State's attorney will be asking another question.

[(Emphasis added).]

At this point, the prosecutor elicited testimony from the officer about the children's heights, with a demonstration to the jury:

THE PROSECUTOR: Officer, if you could please just <u>describe to the jury the approximate size of the children</u> you saw in the park?

GERARDI: Can I stand up?

THE PROSECUTOR: Absolutely.

GERARDI: <u>The children were, I would say, about this high, so maybe about this high to me</u>.

THE PROSECUTOR: And, for the record, when you say "this high", you're at your waist?

GERARDI: At about my – <u>a little below my waist to where about my chest is</u>.

THE PROSECUTOR: And how tall are you, sir?

GERARDI: I'm five [foot], eleven [inches].

[(Emphasis added).]

9

The prosecutor then asked Gerardi to compare the perceived ages of the children he saw at the park with the ages of his own children. The prosecutor further attempted to ask Gerardi his opinion as to the weights of the children. Both of these lines of inquiry were objected to by defense counsel. The judge sustained the objections and struck those particular queries.

Before completing Gerardi's direct examination, the prosecutor returned to the age issue. As a foundation for that renewed inquiry, the prosecutor reminded Gerardi of the additional details he had provided concerning the heights of the children, the adults who had been with them, and the playground equipment they had been using.

Specifically, over defense counsel's continuing objection, the prosecutor asked:

> THE PROSECUTOR: Let me ask you again. Based on your observations of the height of the children in the park, the fact that there were parents present in the park, and your observations as to the equipment the children were playing on, do you have an opinion as to the approximate age range of the children who were in the park that day?
>
> GERARDI: Yes. . . . My opinion is they were age[s] ranging from around [three] years old to about [thirteen] years old.
>
> [(Emphasis added).]

10

This time, the judge did not strike Gerardi's age estimate or instruct the jury to disregard it.

On cross-examination of Gerardi, defense counsel focused on various omissions from the police report he had written. In particular, Gerardi acknowledged his report did not mention that he had seen any parents with the children. He also acknowledged his report did not contain estimates of the children's heights. However, Gerardi reiterated on redirect examination that it was his "visual observation that [he] believed that the children were around [three] to [thirteen] years old."

A.G. testified for the State the following day. She told the jurors that while walking her dog in the park, she had seen about fifteen children and about five parents in the playground. A.G. stated the children had been playing on equipment and objects, such as a rock wall and monkey bars.

A.G. estimated the children's heights ranged from approximately four feet to five-and-a-half feet tall. For comparison, she testified that she herself was five feet, four inches tall. She recalled that the tallest child was about her own height, while the shortest one only reached her hip.

11

As with Gerardi, the prosecutor then asked A.G. to estimate the range of ages of the children. Defense counsel objected, and the following colloquy at side bar ensued:

> THE PROSECUTOR: And the <u>height descriptions</u> you provided of the children that you saw, <u>and the equipment that they were playing with</u> in the park on that day, <u>do you have an opinion as to approximate age range of the children</u> –
>
> DEFENSE COUNSEL: Objection.
>
> THE PROSECUTOR: – who were in the park that day?
>
> DEFENSE COUNSEL: May we be heard at side bar?
>
> THE COURT: Yes.
>
> (Side bar discussion.)
>
> DEFENSE COUNSEL: . . . Okay. <u>It's the same objection I had yesterday to the ages. It's pure speculation</u>. It's not opinion. It's speculation. And it's a conclusion that goes to an element of the crime. I'm sure she is now just saying that the oldest child is <u>exactly</u> [thirteen], which is not an accident.
>
> THE PROSECUTOR: Judge, my response is the same as it was yesterday with Sergeant Gerardi.
>
> <u>Rule 701 allows that, based on the observations of the witness, if they can reasonably provide an opinion as to a fact in issue</u>. Which, again, as [defense counsel] is well aware, whether the children were under the age of [thirteen] is a fact in issue in this case.

Sergeant Gerardi was allowed to testify based on the same foundation as to the opinion.

DEFENSE COUNSEL: It's a fact in issue that is a literal element of the crime and it is a conclusion. It's only a conclusion of fact. The jury –

THE PROSECUTOR: It's not a conclusion. It's an opinion, Judge. And 701 says if it's a fact in issue and it's reasonably based on the person's observations of the person –

THE COURT: I could understand that. But you gotta be careful here because you're asking for an age range. And if she tells me an (Indiscernible) with the description she gave I'm going to strike her answer.

[(Emphasis added).]

The judge then clarified her ruling:

THE COURT: Because do you – she could talk about what she – what her opinion was of as to her observations as to what she saw, because whether – whether that's beyond a reasonable doubt is something else.

DEFENSE COUNSEL: I understand.

THE COURT: You don't lose your right to cross-examination.

DEFENSE COUNSEL: I understand that. I just have to note my objection on the record.

. . . .

13

THE COURT: And – and so it doesn't – it doesn't change anything. [Turning to the prosecutor:] But just be very careful because then it wouldn't be based on observation if she just throws a number out there.

THE PROSECUTOR: Understood.

[(Emphasis added).]

The prosecutor then resumed his inquiry of A.G. about the children's ages:

THE PROSECUTOR: So as I was asking you [A.G.], based on the fact that you observed five parents or adults in the park that day, as well [as] approximately [fifteen] children who you described the height range of those individuals that you observed, as well as the equipment that you saw those children playing on in the park, do you have an opinion as to the approximate age range of the children who were in the park that day[?]

A.G.: From ages [six] to [fifteen]?

THE PROSECUTOR: Okay.

[(Emphasis added).]

On cross-examination of A.G., defense counsel refrained from asking her explicitly about her observations of the ages and heights of the children. Instead, defense counsel asked A.G. questions that sought to demonstrate she had a faulty memory about the incident, which had occurred seven months earlier.

No parents or other eyewitnesses testified for the State. The State did move into evidence several photographs of the park, which, among other things,

14

depicted the playground and the bench where the police found defendant. Defendant, meanwhile, admitted into evidence an aerial photo of the park, using it to show there was an iron fence and some trees between the bench and the playground.

During her summation, defense counsel argued, among other things, that the State failed its burden of proof as to the age element of both the sexual assault and lewdness charges:

> There's no credible evidence as to the children's ages or their presence. We don't know how old the children are. <u>And we certainly do not know how old they are beyond a reasonable doubt</u>. Sergeant Gerardi said [three] to [thirteen]. Well, [thirteen] is a good number to pick because, as you'll see, the statute requires someone to be under [thirteen]. And [A.G.] says she believed the children were [six] to [fifteen]. But we don't know how they got there. <u>They speculated based on the heights but neither of them got close to the children</u>.
>
> Sergeant Gerardi told you he came into the park to make an arrest. He arrested Mr. Gerena and he left. [A.G.] told you she never walked down that playground with her dog. <u>So how either of them got close enough to know their heights, let alone their ages, makes no sense. It's pure speculation. And speculation is a reason to doubt</u>.
>
> [(Emphasis added).]

In his own closing argument, the prosecutor countered defendant's efforts to impeach the age estimates of Gerardi and A.G.:

> So that brings us to whether a child under the age of [thirteen] was present at the time of the offense, at the time that the defendant was masturbating in a public park. How do we know that? I just want to draw your attention to what the element requires, child, singular. The State is not required to prove that every single person in the park that day was under the age of [thirteen].
>
> Now how do we prove that? Because, after all, Sergeant Gerardi told us he didn't speak with any of the parents. He didn't speak with any of the children who were in the park that day. But he also told us why he didn't have a chance to do that. He didn't have the opportunity to speak to those parents, to those children, because as the officers were apprehending the defendant, understandably, people were leaving the park. So, with that, what can we look to [in order] to determine whether the children were under the age of [thirteen]?
>
> Let's start with some common sense. You see [referring to the photographs in evidence] the playground equipment that's in the park. A rock wall that's only a few feet high, ladders, bridges, a tic tac toe board, slides. Who is that equipment designed to entertain? A teenager or a toddler? Do you see any basketball courts in those [photos]? Do you see any large open areas where a teenager could throw around a football or a baseball with their friend?
>
> Draw upon your everyday experiences. Who uses the playground equipment that's found in [this] Park? I'm

16

not asking you just to use your common sense and everyday experiences.

. . . .

You heard the testimony of Sergeant Gerardi. He told us that there was about [twenty] kids in the park when he arrived on scene, and that they ranged in age from [three] to [thirteen] years old. <u>He gave us the basis for that opinion. Their height, the fact that there – there were parents present in the park. The playground equipment that they were using. Is it possible that Sergeant Gerardi was off on the age of a few of those kids? Absolutely. He's not perfect.</u> Could he have mistaken someone who he thought was [twelve] years old, but was, in fact, [thirteen] or [fourteen]? Sure. That's possible. He could have gotten the age of a few kids who were on the higher end of the range that he provided wrong. But going over [twenty]? Getting the age of every single child in that park wrong[?]

For defense [c]ounsel's arguments to ring true Sergeant Gerardi would have had to have mistaken a [thirteen] or [fourteen]-year old for a [five] or [six]-year old. <u>He would have had to mistake[] a teenager for a toddler. He would have had to mistake[] a child who was in the eighth grade for a child who was in the first or second grade</u>.

<u>But you don't have to just look to Sergeant Gerardi's testimony. You have the 911 call, as well</u>. "Grown man in the park touching himself and there's a whole bunch of kids present."

[A.G] told us when she took this stand she recalled about [fifteen] kids present in the park that day. And she did tell us that they ranged in age from about [five] to [sixteen].

17

> So for defense [c]ounsel's arguments to ring true not only would Sergeant Gerardi have to get the age of every single kid who was in that park wrong, [A.G.] would have to get it wrong, too. [A.G.], who is a teenage girl, herself, would have had to confuse a teenager with a toddler. [A.G.], who is a high school senior, would have had to confuse a child in the eighth grade with a child in the first or second grade.

[(Emphasis added).]

The jury found defendant not guilty of second-degree sexual assault by contact but convicted him of fourth-degree lewdness. The jury therefore did not need to render a verdict on the lower-graded offense of disorderly persons lewdness.

At sentencing, the court imposed upon defendant a fourteen-month custodial term for the lewdness offense. The court directed that sentence to be served consecutively with five-year prison terms defendant received for unrelated theft offenses.

On appeal, defendant argues: (1) the court misapplied its discretion in admitting the witnesses' lay opinions about the children's perceived ages and heights; (2) the wording of the court's jury charge on the lesser-included offense unfairly steered the jurors away from that option; and (3) the court eliminated jail credits from the judgment of conviction without proper notice to him.

II.

The critical question on appeal is whether the trial court erred in admitting, over defendant's objection, the two eyewitnesses' lay opinions about the victims' ages and heights. In assessing that evidentiary issue, we apply familiar standards of appellate review.

A trial court's determination about the admissibility of evidence generally "should be upheld 'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)); see also State v. Buda, 195 N.J. 278, 294 (2008). "An appellate court applying this standard 'should not substitute its own judgment for that of the trial court, unless the trial court's ruling is so wide of the mark that a manifest denial of justice resulted.'" J.A.C., 210 N.J. at 295 (quoting Brown, 170 N.J. at 147) (internal quotation omitted).

Having preserved the issue for appeal by objecting below, defendant argues the admission of opinion testimony from Sergeant Gerardi and A.G. about the children's ages and heights violated long-standing principles of New Jersey evidence law. He maintains such "improper opinion testimony deprived [him] of his rights to due process and a fair trial," citing the Fourteenth Amendment of the United States Constitution and Article I, paragraphs 1 and 10

19

of the New Jersey Constitution. As a remedy, defendant requests that his conviction for lewdness be reversed and the case remanded for a new trial.[6]

Defendant relies on the 1916 opinion of the Court of Errors and Appeals in State v. Koettgen, 89 N.J.L. 678, 679-80 (E. & A. 1916), a case involving a prosecution of a dance hall owner for operating a "disorderly house" by selling intoxicating liquors to minors under the then-applicable drinking age of eighteen. The trial court permitted lay witnesses "to give opinion testimony as to the age of persons frequenting the place, such testimony being based solely upon their appearances." Id. at 680. The intermediate appellate court upheld the admission of such opinion testimony, relying on the observation of Professor Wigmore in his treatise on evidence[7] that to reject such opinion evidence about age would be "pedantically overcautious." State v. Koettgen, 88 N.J.L. 51, 52 (Sup. Ct. 1915) (citing Wigmore on Evidence § 222). The intermediate court

---

[6] Notably, defendant does not contend the State's evidence was so deficient that he is entitled on appeal to a judgment of acquittal. Rather, he argues the improper lay opinions tainted the jury's fair consideration of the case.

[7] As a historical note, we point out that Professor John Henry Wigmore, who was then Dean of Northwestern Law School, first published his influential multi-volume treatise on the "Anglo-American System of Evidence in Trials at Common Law" in 1904-05, only a few years before the decisions in Koettgen. He died in 1943. His treatise is updated and published by Wigmore's successors to this day, and widely cited as legal authority.

A-3655-18T2

recognized that the witnesses could only assess the patrons' ages based on their appearances, and that the "value of such testimony varies with circumstances." Ibid. Even so, the court upheld the admission of the witnesses' opinions, noting the jury ultimately must judge the weight of such proof. Ibid.

The Court of Errors and Appeals, with one dissent, reversed the admission of the age opinions in Koettgen. It declared that a person's age is a fact "entirely capable of direct proof if it be important to prove it," 89 N.J.L. at 681, and "[t]he fact of age is not within the category of things . . . which . . . can be proved by opinion testimony." Id. at 680. The Court majority, authored by Justice Kalisch, pronounced that:

> It is a matter of common knowledge, derived from observation and experience, that there is nothing more uncertain and highly speculative than that of attempting to fix the age of a person by his or her appearance. Therefore, to permit a witness to give an opinion as to the age, where age is fact to be proved is to open the gate to the realm of indefinite guesswork, and thereby subvert a necessary and salutary rule of evidence that the existence of a fact must be proved by competent testimony and not by conjecture.
>
> [Id. at 683.]

The majority catalogued cases in which "direct proof" of a child's age was proffered by testimony. Id. at 681-82. As one such illustration, the majority observed that a child's date of birth could be proven through her mother, but

21

could not be conclusively established when only the child herself and her father testified about her age.  Id. at 682.

The dissent in Koettgen, authored by Justice White, endorsed the admissibility reasoning of the Supreme Court below.  Id. at 687.  Justice White criticized the majority's treatment of the witness' observations about the patrons' ages as incompetent opinion.  He acknowledged that it may be improper for lay witnesses, based purely upon observation, to testify that two people were "in love," or that a person was "despondent."  Ibid.  By contrast, he deemed it permissible for witnesses who have observed other persons to describe not only the details of their appearances but also their first-hand perceptions of those persons' ages.  Ibid.  Otherwise, he noted, in cases where birth witnesses or records cannot be found, excluding such opinion testimony by eyewitnesses would "leave the jury to guess at the age."  Ibid.  The justice noted that direct proof of patrons' ages often was not readily available in disorderly-house prosecutions, and that the majority's categorical rule of exclusion was "not only unsound in principle, but vastly pernicious in practice."  Ibid.

The flat prohibition on age opinion testimony announced by the Koettgen majority has not been reaffirmed in over a century.  Only three published New

22                                    A-3655-18T2

Jersey cases since 1916 have addressed the topic, and none of them applied an absolute bar to such testimony.

In Laurino v. State Div. of Alcoholic Bev. Control, 81 N.J. Super. 220, 226-27 (App. Div. 1963), we reversed a regulatory agency's finding that a bar owner had sufficient reason to believe that two females he employed were under the legal drinking age of twenty-one. The women had presented to the tavern owner baptismal certificates and police-issued fingerprint cards showing they were over twenty-one. They also had falsely represented in oral discussions with the owner they were over the cutoff age. Id. at 227.

We ruled the testimony of two undercover agents in Laurino who had observed the employees in the bar and perceived they were underage was inadequate to sustain the charges against the owner. We did so because the agents had not provided "reasons for their judgment," leaving the court "uninformed as to the factors in the appearances of the [employees] which influenced their opinions." Id. at 226-27. Given the circumstances, we found "no lack of prudence in the licensee's judgment [to allow them to serve liquor] based on the girls' appearances." Id. at 227. Citing Koettgen, we reiterated the general proposition that "determining the age of a person by his appearance is often very speculative." Laurino, 81 N.J. Super. at 226 (citing Koettgen, 89

N.J.L. at 683). Even so, we did not state in <u>Laurino</u> that such testimony is categorically inadmissible, but rather focused on the conclusory nature of the agents' opinions in that case.

Most recently, in <u>State v. May</u>, 362 N.J. Super. 572, 593 (App. Div. 2003), we rejected a defendant's argument in a child pornography case that the State was required to present expert testimony to establish the children in the seized images were under the relevant statutory age of sixteen. Lacking direct proof of the children's dates of birth, the State argued the jurors were capable of determining—from their own observations of the images—that one or more of the children was younger than sixteen. In analyzing these issues, we reasoned:

> We are mindful that proof of a person's age by his or her appearance alone is a questionable practice. <u>See</u> <u>State v. Koettgen</u>, 89 N.J.L. 678, 683, 99 A. 400, 402 (E. & A. 1916) (observing that "[i]t is a matter of common knowledge, derived from observation and experience, that there is nothing more uncertain and highly speculative than that of attempting to fix the age of a person by his or her appearance"); <u>Laurino v. State</u> <u>Div. of Alcoholic Bev. Control</u>, 81 N.J. Super. 220, 226, 195 A.2d 306, 309 (App. Div. 1963) (noting that "determining the age of a person by his appearance is most often very speculative"). In the instant matter, even the State's witness, Detective Wolf, remarked that "it really takes an expert, usually a pediatrician" to determine a child's age from the images presented in a child-pornography case.

> Notwithstanding the potential pitfalls, we are constrained to observe that, in particular circumstances, determinations of an age threshold based on outward appearance alone can be seen to be as valid an exercise of common knowledge as of expert opinion. Whether or not a person is older or younger than sixteen years of age may well be easier to determine than a precise age. We cannot conclude that such evaluations are always, in the terms of the standard test, "beyond the ken of the average juror[,]" DeHanes v. Rothman, 158 N.J. 90, 100, 727 A.2d 8, 13 (1999), or that experts are invariably better equipped than laypersons are to make the judgment based on appearance alone.
>
> [Id. at 583-84 (alterations in original) (emphasis added).]

We further noted in May the capacity of laypersons to approximate the ages of children is highly dependent on the facts and circumstances. Such a case-by-case analysis may include where the children appear to fit along the spectrum of ages:

> "Like any other fact, age is, of course, for the determination of the jury." State v. Carlone, 109 N.J.L. 208, 211, 160 A. 551, 552 (Sup. Ct. 1932). "[W]hether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony . . . must be determined on a case by case basis." United States v. Katz, 178 F.3d 368, 373 (5th Cir. 1999).
>
> If the disputed images in such a case depict either very young child-models or older "models of sufficient maturity," expert testimony will not be required because a layperson can plainly make the determination

whether the person so depicted is younger than sixteen. Ibid. However, when the persons depicted in the images approach sixteen years of age, "expert testimony may well be necessary to 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Ibid. (quoting Fed. R. Evid. 702) [federal case citations omitted].

. . . .

We adopt the rationale of these federal cases, including the implicit requirement that the trial court must examine each image to be presented to the jury in order to make discrete assessments, in discharge of its gatekeeping functions, which of the images can be evaluated by the jury on a common-knowledge basis and which require expert testimony to assist the jury in determining whether the person depicted is older or younger than sixteen years of age.

[Id. at 594-95 (emphasis added).]

We added that the jury should be charged carefully in such cases to refrain from speculation about the children's ages:

Moreover, we emphasize that, irrespective of how the State chooses to prove the age element, when the trial court addresses the age issue in its instructions to the jury, the judge must specifically instruct the jury that the State bears the burden of proving beyond a reasonable doubt that the person depicted in each image to be used as a basis for conviction is less than sixteen years of age. The judge must charge the jury that speculation about age is not permitted, but rather that the jury must be persuaded by the evidence that, in each instance, the sixteen-year age threshold has been proven.

26

[Id. at 595 (emphasis added).]

Our state's present highest court under the 1947 Constitution has not specifically addressed this age estimation issue since the Court of Errors and Appeals' 1916 decision in Koettgen. The post-1947 Supreme Court has not discussed or cited Koettgen in any opinion.

We are mindful the Supreme Court's seminal opinion illuminating the risks of misidentification in State v. Henderson, 208 N.J. 208 (2011), mentions age as one of many characteristics that a witness may be prone to misperceive. In that regard, the Court noted there is an "own-age bias" wherein witnesses are "better at recognizing people of [their] own age than . . . people of other ages." Id. at 265-66 (alteration in original). Nonetheless, the Court in Henderson did not cite or endorse Koettgen's flat prohibition on lay opinion testimony about age.

The most recent version of the Wigmore treatise continues to reject as "pedantically overcautious" a categorical judicial ban on admitting lay witness opinions about the ages of other persons. As Section 222 of Wigmore advises:

> Experience teaches us that corporal appearances are approximately an index of the age of their bearer, particularly for the marked extremes of old age and youth. In every case such evidence should be accepted and weighed for what it may be worth. In particular,

A-3655-18T2

the outward physical appearance of an alleged minor may be considered in judging of his age; for such an inference <u>a contrary rule would be pedantically overcautious</u>.

[<u>Wigmore on Evidence</u> § 222 (4th ed. 1985) (emphasis added).]

Several states have authorized the admission of such opinion testimony on a case-by-case basis, particularly if the opinion is based upon more than physical appearance.  <u>See, e.g.</u>, <u>State v. Lauritsen</u>, 199 Neb. 816, 818-19 (1978) (allowing circumstantial evidence of defendant's age where he was present in court, was identified by witnesses at trial, and testified); <u>Commonwealth v. Pittman</u>, 25 Mass. App. Ct. 25, 27-28 (1987) (holding that some additional evidence beyond appearance must be produced where "proof of age is necessary to establish the offense" and the person whose age is at issue is not overtly under or over the age limit set forth for the offense); <u>In re Interest of Roy R.</u>, 3 Neb. App. 816, 819-20 (1995) (reaffirming <u>Lauritsen</u> in a bench trial wherein the age of the juvenile was not confirmed as fourteen years old but was sufficiently under eighteen years old to warrant trial in juvenile court); <u>Jewell v. Commonwealth</u>, 8 Va. App. 353, 356-57 (1989) (citing <u>Lauritsen</u> and Wigmore in remanding a case where the physical appearance of the defendant was not

relied upon in determining his age, but rather documents that were not admitted into evidence).

Defendant's brief cites a Sixth Circuit case, United States v. Russell, 532 F.2d 1063 (6th Cir. 1976), which noted the variability of opinion testimony by experienced police officers, whose weight and age estimates of other persons can "vary by as much as twenty pounds and fifteen years." Id. at 1066 (citing Patrick M. Wall, Eye-Witness Identification in Criminal Cases 10-11 (1965)). Defendant also relies upon a 2008 law review article that refers to research studies showing that, within one day after viewing a person, a witness' "[m]emory for physical attributes of strangers' age, hair color, and height [is] usually inaccurate."  Amy Luria, Showup Identifications: A Comprehensive Overview of the Problems and a Discussion of Necessary Changes, 86 Neb. L. Rev. 515, 529 (2008) (first alteration in original) (emphasis added) (quoting A. Daniel Yarmey, Understanding Police and Police Work: Psychosocial Issues 298-99 (1990)).

In the present case, the opinion testimony of Gerardi and A.G. about the children's ages was based in part upon their separate perceptions of the youngsters' heights.  No reported case in this State categorically forbids lay witnesses from offering such height estimates.  The briefing refers in this regard

to our opinion in <u>Gretowski v. Hall Motor Express</u>, 25 N.J. Super. 192, 196 (App. Div. 1953), in which we observed that lay witnesses are regularly permitted to estimate the heights and other physical attributes of persons and objects, with a caveat that "ordinarily such information would not be otherwise reproducible." We recognize, however, the factual setting in <u>Gretowski</u> involved a lay witness who saw an accident and estimated the relative widths of cars and traffic lanes, not the heights or other characteristics of human beings.

The pertinent rule of evidence on lay opinion, Rule 701, provides us with some general principles to help guide our analysis. The current version of that rule states:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it:
>
> (a) is <u>rationally based on the witness' perception</u>; and
>
> (b) <u>will assist</u> in understanding the witness' testimony or determining a fact in issue.
>
> [N.J.R.E. 701 (emphasis added).]

The provision is derived from former New Jersey Evidence Rule 56(1) enacted in 1967, and the subsequent promulgation of Federal Rule of Evidence 701 in 1975. Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, cmt. 1 on N.J.R.E. 701 (2020); 1991 Supreme Court Committee Comment to N.J.R.E. 701.

The first element of the rule may be satisfied by showing the witness had the opportunity, through one or more of his or her senses, to perceive directly the person, object, or event. State v. LaBrutto, 114 N.J. 187, 197-98 (1989). The perception may not be based primarily on inadmissible hearsay. Neno v. Clinton, 167 N.J. 573, 581, 585 (2001). The second element of Rule 701, helpfulness to the trier of fact, also is not generally difficult to establish. However, if the lay opinion is presented by a testifying police officer, courts should exercise discretion to prevent jurors from unduly relying on the views of that law enforcement official. See State v. McLean, 205 N.J. 438, 460-61 (2011). Additionally, the lay witness should not cross into the realm of expert opinion that entails scientific or other specialized knowledge. McLean, 205 N.J. at 459-60. Cf. N.J.R.E. 702 (regarding expert opinion).

As a further limitation on such opinion testimony, an opposing party is free to argue under Evidence Rule 403 that the witness' testimony should be excluded in the court's discretion if it is unduly prejudicial, confusing or misleading to a jury, needlessly cumulative, or would cause undue delay or a waste of time. N.J.R.E. 403. Those limited grounds for exclusion only prevail, however, if the risks of such testimony "substantially outweigh" its probative value. Ibid.

31

The categorical barrier adopted in 1916 by the Court of Errors and Appeals in <u>Koettgen</u> is out of step with these modern principles of evidence law. To be sure, we appreciate the inherent risks of imprecision and mistake when eyewitnesses estimate the ages of other persons they have observed. Particularly with adults, elements such as clothing, head coverings, facial hair, eyeglasses, hair coloring, posture, mobility, health, tone of voice, vocabulary, plastic surgery, wigs, disguises, and lighting may throw off an observer's perception of their ages based on physical appearance. The physical setting and the apparent ages of any accompanying persons also may affect the perception. Movies and stage plays often successfully cast older persons in younger roles and vice versa.[8] We can be easily fooled or mistaken about age. Nevertheless, it is within the common knowledge and regular experience of laypersons to form quick opinions about whether they are encountering a young child, a middle-aged person, or a senior citizen.

---

[8] As just a few examples, Leonardo DiCaprio, then age thirty-seven, played seventy-seven-year-old FBI Director J. Edgar Hoover in <u>J. Edgar</u> (2001); Emma Thompson, then age thirty-five, was cast as a nineteen year old in a film adaptation of Jane Austen's <u>Sense and Sensibility</u> (1995); and Orson Welles was only age twenty-five when he portrayed the tycoon Charles Foster Kane as an elderly man in <u>Citizen Kane</u> (1941). These Hollywood depictions, of course, involve professional makeup and costume artistry unlike what would be commonly encountered in daily life.

We similarly are cognizant that lay witnesses may err in quantifying the heights of other persons. But we agree with the Wigmore treatise and the case law of other states that allows trial courts to admit such opinion testimony where it has a reasonable foundation. Indeed, as we have already noted, our post-1916 decisions in Laurino and May did not adopt or apply a rigid ban on such proof.

To guide the bench and bar in future cases, we offer several factors that may sensibly be applied in resolving whether such lay opinion, assuming of course it is relevant under Evidence Rule 401, is admissible. We list them in no special order.

First, the court should consider, if known, the approximate distance of the eyewitness to the person who he or she observed. In the present case, the record does not specify in feet how far away A.G. and the police officer were from the children in the playground, although the judge and jury did have the benefit of photographs of the scene. We do note A.G. testified that defendant was about ten feet away from the children, and she was about twenty-five feet away from defendant when she observed his own lewd conduct. Both witnesses were also close enough to describe under oath the number of children and adults who were present and their activities in the playground.

Second, the court should consider, if supplied, the estimated length of time of the witness' observation. The record does not specify such times, although again both A.G. and Gerardi were able to describe the number of children and how they were playing. Their testimony does not state they had only a momentary opportunity to glance in the children's direction.

Third, and significantly here, both A.G. and the officer observed that the children were using playground equipment commonly used by pre-teen youths, such as monkey bars and a slide. We are mindful such equipment sometimes is used by teenagers and adults, but it is certainly consistent with the witnesses' observations that one or more of the children were as young as six. In addition, we note their mutual observation that the children appeared to be accompanied by several parents or other adults, and that the assembly dispersed when the police arrived. Although it is not impossible that a group of teenagers will choose to go to a small playground with their parents or other adults without any young children, common experience suggests otherwise.

Fourth, it is helpful if the testifying eyewitnesses make any physical comparisons of the observed individuals with the height or size of any nearby objects or other persons. Here, A.G., who is five foot, four inches, testified that at least one of the children appeared no taller than her hip. Gerardi, who is five

34

foot, eleven inches tall, stated that the smallest child appeared to be no higher than his waist. These height observations buttress the witnesses' perception of their ages.

Fifth, a court should consider whether the eyewitness attests to a range rather than a specific height or age. As we noted in <u>May</u>, the opinion can be more allowable where only a range is pertinent, e.g., whether the defendant or a victim is under or over a legally relevant age, rather than the need to ascertain a person's precise actual age or height. Here, both A.G. and Gerardi attested to a range of ages for the children. Although the upper end of A.G.'s range (age fifteen) exceeded thirteen, she also testified the children were as young as age six. In this regard, it is important to remember that in this case the State needed to only prove that one of the children was under the age of thirteen, not all of them.

Sixth, it may be of consequence whether the observed person is approximately the same age or height of the eyewitness. This factor takes into account the Court's comment in <u>Henderson</u> that witnesses may have a greater ability to assess the ages of persons who are their chronological peers. Here, although Gerardi is an adult, A.G. was a seventeen-year-old teenager at the time; arguably she would be attuned to recognizing whether the children she saw were

likewise teenagers.  This was a fair point the prosecutor made in closing argument.

Seventh, the court should consider whether there is corroborating proof of the eyewitness' age estimate.  In this case, the testimony of A.G. substantially dovetailed with that of the officer.  In addition, the children's playground activities in the company of adults corroborated the witnesses' opinions about the children's ages and heights.  Neither witness presented bare "net opinions." See Townsend v. Pierre, 221 N.J. 36, 52-59 (2015) (delineating the court's authority to exclude unsupported net opinions).  In fact, the judge admonished the prosecutor that the witnesses could not simply "throw a number out," an admonition which prompted the State to lay a more explicit foundation for the witnesses' age and height estimates.

Lastly, the court should consider the totality of circumstances, and whether the evidence should be excluded under Rule 403.  On the whole, there are ample contextual circumstances here to justify the admission of the lay opinions presented by A.G. and Gerardi.  Their testimony was highly relevant to the pertinent age threshold under the criminal statutes.  Unlike McLean, the police officer's testimony was not expert testimony improperly presented in the guise of lay opinion.  Also, there was no lethal weapon involved that might have

instilled fear and distracted the observers. Cf. Henderson, 208 N.J. at 262-63, 291. In fact, according to A.G., she looked away from defendant once she recognized what he was doing.

The asserted prejudice to defendant in this case did not substantially outweigh the evidence's probative value under Rule 403. The judge did not misapply her discretion in overruling defendant's objections, and did not deprive defendant of a fair trial. J.A.C., 210 N.J. at 295. Defense counsel had a fair chance to impeach both witnesses on cross-examination, and ably took advantage of that opportunity with pointed queries. The closing arguments on the subject were not restricted by the court, and defense counsel robustly argued to the jurors why they should not accept the witnesses' opinions about the children's ages.

Where, as here, the applicable factors support admission of a witness' opinions about the age or height of another person, the court may consider in its discretion whether a cautionary or limiting instruction to the jury is warranted under Evidence Rule 105. There was no request for any such special instruction

here, and the jurors did have the benefit of the court's general jury instructions about witness credibility.[9]

For these many reasons, we reject defendant's argument of evidentiary error and affirm his conviction. And, as a matter of law, we are not constrained to follow the obsolete total ban on age-related opinion testimony set forth in Koettgen, and instead utilize a multi-factor approach that is consistent with the Supreme Court's modern rules of evidence and evolved case law.[10]

---

[9] We invite the Model Criminal and Civil Jury Charge Committees to consider whether any model charges about witness estimates of age or height should be fashioned. Even if no such model language is adopted, trial judges retain the discretion to provide appropriate charges, on request or sua sponte, as the situation may warrant.

[10] Although opinions of the former Court of Errors and Appeals are presumptively binding, we regard the Supreme Court's adoption of Evidence Rule 56(1) in 1967 and N.J.R.E. 701 in 1993, which prescribe a flexible approach to the admission of lay opinion—as well as Supreme Court case law expansively applying those rules—to contravene and displace the kind of rigid categorical prohibition on lay opinion articulated in Koettgen. See, e.g., LaBrutto, 114 N.J. at 197-99 (declaring "[i]t is well-established that a lay witness may give his opinion in matters of common knowledge and observation," and applying that broad principle to allow the admission of lay opinion about the point of impact of a car crash); see also State v. Bealor, 187 N.J. 574, 586 (2006) (citing and applying that well-established principle); State v. Johnson, 120 N.J. 263, 294 (1990) (same).

A-3655-18T2

### III.

The other issues raised on appeal only warrant very brief comment.

We are unpersuaded by defendant's claim that the trial judge unfairly instructed the jury by the words she used in describing the jury's option to find him guilty of only the lesser-included disorderly persons offense. The instruction sufficiently tracked the model jury charge. The charge's use of the term "possible" in alluding to the disorderly persons offense did not unfairly convey to the jurors a preference against that lesser-included option.

We do agree, however, that the court's amendment of the judgment of conviction to remove certain jail credits without affording defendant notice and an opportunity to be heard about the post-judgment alteration requires a remand for such participation. R. 3:21-10(c).

All other points raised on appeal lack sufficient merit to be discussed. R. 2:11-3(e)(2).

Affirmed, except remanded for a hearing on jail credits.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3655-18T2